UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                  Plaintiff,

        v.

FREDERICK B. YOUNG,

                                  Defendant.
_____

AMENDED[1] REPORT & RECOMMENDATION

21-CR-6010DGL

## PRELIMINARY STATEMENT

Currently pending before the Court is a motion for a judicial determination pursuant to 18 U.S.C. § 4241 whether Young is competent to stand trial. (Docket # 35). For the reasons explained below, I recommend that Young be found currently incompetent to stand trial, a conclusion with which the government agrees. (*See* Docket # 59 at 9-10).

## FACTUAL BACKGROUND

Young has been charged in a one-count indictment with failing to register as a sex offender under the Sex Offender Registration and Notification Act, in violation of 18 U.S.C. § 2250(a). (Docket # 14). Specifically, the indictment charges Young with traveling from New York to Michigan without updating his registration. (*Id.*).

---

[1] Page 8 of this Court's original Report and Recommendation refers to a court appearance on May 20, 2022. (Docket # 73). That date is incorrect and reflects a typographical error. The referenced court appearance occurred on May 20, 2021. (Docket # 33). This Amended Report and Recommendation corrects that mistake. Other than this modification, the Amended Report and Recommendation is identical to the original.

On May 20, 2021, Young's prior counsel, Steven Slawinski, Esq., filed the pending motion. (Docket # 35). Upon review of the motion, this Court ordered that Young undergo a psychiatric evaluation at an appropriate federal medical facility to determine whether he is suffering from a mental disease or defect that renders him incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (Docket # 41). After being informed of difficulties that had arisen in transporting Young to an appropriate federal medical facility, on August 23, 2021, the Court rescinded its June 21, 2021 Order, including the provision committing him to the custody of the Bureau of Prison for placement at a suitable federal facility for the competency examination, and directed that Young be transported forthwith to the Western District of New York for a competency examination to be conducted by Rory P. Houghtalen, MD. (Docket # 45).

On September 10 and 30, 2021, Dr. Houghtalen evaluated Young via a secure telehealth portal. (Docket ## 50; 60 at 23-24). At the time of both meetings, Young was represented by his former counsel. Following the evaluation, Dr. Houghtalen submitted a written report dated November 26, 2021. (Docket # 50). On November 30, 2021, this Court granted Young's request for new counsel, and on December 3, 2021, Scott Green, Esq., was appointed to represent Young. (Docket ## 51, 52). A competency hearing was held by video on January 7, 2022. (Docket # 57). At the hearing, both Dr. Houghtalen and Young testified. (Docket ## 57, 60).

Following the hearing, the Court determined that further testimony from Dr. Houghtalen would assist the Court in rendering its competency determination and scheduled a continuation of the competency hearing for February 25, 2022. (Docket # 65). At the conclusion of the continued hearing on February 25, 2022, at which Dr. Houghtalen appeared

and testified by video, the Court granted defense counsel's request that Dr. Houghtalen continue his evaluation of Young, specifically, to assess his ability to assist his newly-appointed counsel in his defense, by meeting with Young and his counsel to observe and assess the relationship between them. (Docket ## 65, 66).

On March 16, 2022, Dr. Houghtalen conducted a further evaluation of Young in the presence of Mr. Green via a secure telehealth portal, and submitted a written report dated March 22, 2022 to the Court. (Docket # 69).

## **DISCUSSION**

A court must declare a criminal defendant incompetent to stand trial if it finds "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). The determination of competency turns on whether the defendant has "(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him." *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)) (internal quotations omitted). In assessing competency, "the district court may rely on a number of factors, including medical opinion and the court's observations of the defendant's comportment." *Id.* at 411 (citing *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir. 1990)).

In concluding that Young is currently incompetent to stand trial, I rely principally upon Dr. Houghtalen's testimony, his written reports, Young's testimony during the hearing and, to a lesser degree, upon Young's conduct during several court appearances.

I turn first to Dr. Houghtalen's November report and his hearing testimony, which I credit. With respect to Dr. Houghtalen's qualifications and experience, Dr. Houghtalen completed his medical training in 1990 and is currently licensed to practice medicine in the State of New York and board-certified in the areas of general and forensic psychiatry. (Docket # 60 at 4). Currently, Dr. Houghtalen maintains a private general psychiatric practice, provides forensic psychiatric consultation services, and serves as a clinical professor of psychiatry at the University of Rochester. (*Id.* at 4-5). Dr. Houghtalen has conducted over one hundred competency determinations during his career. (*Id.* at 5).

Prior to issuing his November report, Houghtalen conducted two clinical interviews of Young, the first on September 10, 2021, for approximately thirty minutes, and the second on September 30, 2022, for approximately two-and-a-half hours. (Docket ## 50; 60 at 24, 30). During the second session, Houghtalen also attempted to administer the Montreal Cognitive Assessment ("MOCA") to assess Young's cognitive function. (Docket # 50 at 9). Dr. Houghtalen also reviewed certain of Young's medical records, prior competency reports relating to Young issued in 2012, and records relating to the pending prosecution. (*Id.* at 1). Finally, Dr. Houghtalen conducted interviews of Mr. Slawinski, Young's then-defense counsel, and two attorneys who had previously represented Young in state court criminal proceedings. (*Id.*).

In his written report, Dr. Houghtalen opined that Young suffered from a frontal brain injury and a mental disorder in the spectrum of the schizophrenic psychoses, either Schizophrenia or Schizoaffective Disorder. (*Id.* at 9). Dr. Houghtalen observed that Young

4

perceived his then-defense counsel "as operating in a conspiratorial manner to continue [Young's] confinement" and that Young became easily enraged in defense counsel's presence. (*Id.* at 10). The problems exhibited in the relationship between defense counsel and Young, according to Dr. Houghtalen, mirrored the reported dynamic experienced by the previous defense attorneys whom Dr. Houghtalen interviewed. (*Id.*).

During his testimony, Dr. Houghtalen described the interaction between Young and defense counsel as "intense" and noted that Young swore at him and referred to him with demeaning and offensive slurs. (Docket # 60 at 29). During his interviews with Dr. Houghtalen, Young conveyed his belief that his defense counsel was the primary organizer of a conspiracy to keep him confined and that the Court was a "pawn" in this conspiracy. (*Id.* at 32). According to Dr. Houghtalen, Young described a system of "users" and "controllers" whose ultimate goal was to confine Young without due process and viewed his defense attorney as the primary orchestrator of the conspiracy. (*Id.* at 32-33).

During his testimony, Dr. Houghtalen explained that Young had the capacity to explain the differing roles of the judge, prosecutor, and defense counsel, to speak intelligently about legal principles, and to factually understand the nature and consequences of the pending proceeding. (*Id.* at 32-34). In Dr. Houghtalen's opinion, however, Young's capacity to participate in his defense was impaired both by his delusions and irrational beliefs concerning the court participants' conspiracy to keep him confined and by his inability to control his rage due to his frontal brain injury. (*Id.* at 32-35). Likewise, in his report, Dr. Houghtalen opined that although Young "ha[d] a general understanding of the usual roles of judge, prosecutor, defense counsel, jury and witnesses," his "psychotic condition and paranoid interpretation [was]

corrupting his rational understanding of their respective roles and responsibilities." (Docket # 50 at 10).

Dr. Houghtalen concluded that Young would be unable to testify meaningfully in his defense or engage in a cogent plea colloquy due to his "disorganized" thought process, paranoia, and impulsive, irritable, and hostile behavior. (*Id.* at 10). According to Dr. Houghtalen, these same impairments would likely lead Young to disrupt courtroom proceedings. (*Id.*). Dr. Houghtalen also concluded that Young was unable to meaningfully work with counsel in his own defense due to his belief that his attorney was "operating in a conspiratorial manner to continue [Young's] confinement." (*Id.*).

Young's hearing testimony reflected his ability to cogently discuss the differing roles of the courtroom participants, including the judge, the prosecutor, and defense counsel, the nature of the charges against him, the federal sentencing guidelines, the applicable burden of proof, and the general procedures applicable to a criminal trial. (Docket # 60 at 44-48). On the other hand, as Dr. Houghtalen had observed, his testimony reflected his belief that his previous defense counsel had purposefully prevented Young from receiving medical treatment during his confinement, causing a deterioration in Young's health condition, was untruthful during their discussions, and was "setting [Young] up." (*Id.* at 54-57).

I turn next to Dr. Houghtalen's March 22, 2022 report, which reflects his assessment of the relationship between Young and his current counsel. Prior to authoring the report, Dr. Houghtalen reviewed the audio recording and transcript of Young's January hearing testimony and several handwritten documents authored by Young and met with Young and Mr. Green on March 16 for approximately one hour via a secure telehealth portal. (Docket # 69). According to Dr. Houghtalen, Young's writings reiterated his belief that his previous defense

6

counsel intentionally harmed him by withholding important medical information from the Court, the government and the United States Marshals Service; accused Dr. Houghtalen of being adversarial, lacking integrity, and submitting false documents to the Court under the influence of previous defense counsel; accused Mr. Green of attempting to control him and implicitly threatened assaultive behavior; suggested that the competency motion was an act of retaliation by his previous attorney; characterized the judicial system as "hostile" and injurious to him; and referred to all individuals involved in the pending proceedings as "racist fuckers." (*Id.* at 2).

According to Dr. Houghtalen, during the interview with Young and Mr. Green, Green communicated that their attorney-client relationship had deteriorated and that Young had raised several "strident and aggressive" complaints about Green. (*Id.* at 1-2). Young refused to participate during the initial part of the interview by turning away from the camera. Dr. Houghtalen reported that when Young did begin participating, his behavior was intense and he often displayed "rageful affect." (*Id.* at 3). Dr. Houghtalen recounted several of Young's comments, including accusations against Dr. Houghtalen of racism and bias directed and influenced by Mr. Slawinski. (*Id.*). According to Dr. Houghtalen, Young's "speech was aggressive, brash, loud and punctuated with frequent cursing and personal insults." (*Id.*). Young repeatedly interrupted both Mr. Green and Dr. Houghtalen and ended the interview by stating that he would never again meet with Dr. Houghtalen and that he "did not give a fuck about a competency evaluation." (*Id.*).

In his supplemental report, Dr. Houghtalen states that his review of Young's writings and his March 16 meeting with Young and Mr. Green "reinforced the concerns" about Young's capacity to proceed. (*Id.* at 4). According to Dr. Houghtalen, Young demonstrates a "repeated pattern of paranoid interpretation and reaction to defense counsel that . . . is driven by

7

an underlying psychotic disorder . . . consistent with either Schizophrenia or Schizoaffective Disorder." (*Id.*). Dr. Houghtalen opines that Young's frontal lobe syndrome contributes to his inability to sustain a relationship with a defense attorney because of his inability to control his emotions and his tendency to behave towards his counsel in an aggressive and threatening manner. (*Id.*).

In his supplemental report, Dr. Houghtalen reiterates that Young's lack of capacity does not stem from "defects in factual understanding of the roles and responsibilities of the Court and participants in a trial"; rather, it arises from his paranoid interpretation that "the attorneys involved, the Court and a generally corrupt system [are] conspir[ing] to violate his rights, sustain his confinement and cause unnecessary suffering." (*Id.*). Dr. Houghtalen further concludes that Young is not capable of meaningfully cooperating with defense counsel and that his prognosis for restoration to competence is poor, due in part to the organic nature of his brain injury, as well as Young's resistance to accepting treatment. (*Id.*). Dr. Houghtalen also opines that Young likely will become disruptive during courtroom proceedings and will be unable to contain his affect in order to testify meaningfully in his defense or to offer a cogent plea colloquy. (*Id.*).

Young's own conduct during several court proceedings supports Dr. Houghtalen's conclusions. For example, on two occasions, during proceedings on January 20, 2021 and February 18, 2021, Young left the proceedings, which were being conducted remotely via Zoom.gov, before they were adjourned and without explanation. (Docket ## 12, 23). During the February 18 proceeding, Young repeatedly interrupted the proceedings by talking over his attorney and the undersigned. In addition, during an appearance on May 20, 2021, Young repeatedly interrupted the proceedings, threatened to leave before the proceedings were

adjourned, and threw papers after the Court rendered its decision on the government's motion for detention. Several times during that proceeding the Court instructed Young to moderate his behavior. The proceedings concluded with an outburst from Young, during which he raised his voice and used several expletives.

In sum, considering Dr. Houghtalen's reports and testimony, Young's testimony, and, to a lesser extent, Young's courtroom behavior, I find by a preponderance of the evidence that Young is presently suffering from a mental disease and defect – specifically, a psychotic disorder consistent with either Schizophrenia or Schizoaffective Disorder and a frontal lobe injury – that render him unable to assist properly in his defense. Although Dr. Houghtalen has opined that the prognosis for restoration is poor, Young has previously been restored to competency through treatment after exhibiting similar symptoms and behavior. *See United States v. Young*, 11-CR-6195 at Docket ## 26, 27, 34. After being restored to competency, Young participated in the criminal proceedings, which concluded with the entry of a guilty plea. *Id.* at Docket ## 38, 39.

## CONCLUSION

For the foregoing reasons, it is my recommendation that Frederick Young be found currently incompetent to stand trial and order that he be committed to the custody of the Attorney General for a reasonable period, not to exceed four months, to determine "whether

there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
   April 18, 2022

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       April 18, 2022

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).